UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID LINDENSMITH, #488856,

    Plaintiff,

-vs-

DR. PETSCHOW, ET AL.,

    Defendants.

Case No. 12-10644
District Judge Gerald E. Rosen
Magistrate Judge R. Steven Whalen

_____ /

## REPORT AND RECOMMENDATION

On February 14, 2012, Plaintiff David Lindensmith, a prison inmate in the custody of the Michigan Department of Corrections ("MDOC"), filed a *pro se* civil complaint pursuant to 42 U.S.C. § 1983. Before the Court is Defendant Kevin Petschow's Motion for Summary Judgment [Doc. #14], which has been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, I recommend that the motion be GRANTED.

### I. FACTS

The Plaintiff is serving a prison sentence for first-degree criminal sexual conduct.[1] In his complaint [Doc. #1], he alleges that on July 1, 2011, he was transferred to the Parnell Correctional Facility to participate in a sex offender programming ("SOP") group. On July 15, 2011, he received a Parole Eligibility Report stating that he needed to complete SOP, "among other things." On or about July 19, 2011, Plaintiff attended the initial session of Defendant Dr. Petschow's SOP group. However, Dr. Petschow told him

---

[1] Neither Plaintiff nor Defendant specifies the offense of conviction. However, Plaintiff previously filed a petition for writ of habeas corpus in this Court, indicating that he pled no contest in the Genesee County Circuit Court to first-degree criminal sexual conduct (CSC I). *See Lindensmith v. Berghuis*, E.D. Mich. No. 08-12346.

-1-

he was ineligible for the group because he was appealing his conviction, which was "mutually exclusive" with participating in the group, and that "the group requires admissions that a lawyer is going to tell you not to make."

Defendant states that on September 19, 2011, he was denied parole. Although his parole guidelines showed a "high probability of parole," the Parole Board departed from the guidelines and denied parole because he had "not had the benefit of therapeutic programming which is designed to allow him to gain greater insight into his deviant behavior." The Board also stated that Plaintiff "refuses to accept responsibility."

Plaintiff claims that the Parole Board, and specifically Board members Stephen DeBoer and Jane E. Price, violated his First Amendment right to petition the government by denying him parole because he was appealing his convictions, and his First Amendment right to free speech by requiring him to admit guilt in order to receive parole. He also claims that the Board violated his Fifth Amendment protection against self-incrimination by requiring him to admit guilt. Finally, he claims that Dr. Petschow violated his First Amendment rights by denying him participation in the SOP group "due to exercising his 1st Amendment Constitutional right to access the Courts."

Attached to Defendant's motion as Exhibit C is the Affidavit of Kevin Petschow, a psychologist employed by the MDOC at the Parnell Correctional Facility. He states that Plaintiff attended the first session of his SOP. *Petschow Affidavit*, ¶ 5. He indicates that it is standard practice to screen for inmates who "not eligible to continue because of not being amenable, not being workable in the group, or otherwise not meeting the screening criteria. Among the latter are those claiming innocence and actively appealing their guilty conviction in court." *Id*. In ¶ 9 of his affidavit, Dr. Petschow states, "Not being able to meet these criteria [for SOP group] by stance of not guilty of CSC, Mr. Lindensmith

-2-

disqualifies himself and becomes ineligible for group enrollment and participation as he would not be able to self-disclose on his offense actions and otherwise discuss his sex offending dynamics." Dr. Petchow also states, "I am not a member of the Parole Board and have no involvement in Parole Eligibility Interviews of the ultimate Parole determination." *Id*. ¶ 10.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail on a motion for summary judgment, the non-moving party must show sufficient evidence to create a genuine issue of material fact. *Klepper v. First American Bank*, 916 F.2d 337, 341-42 (6th Cir. 1990). Drawing all reasonable inferences in favor of the non-moving party, the Court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Entry of summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celetox Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). When the "record taken as a whole could not lead a rational trier of fact to find for the nonmoving party," there is no genuine issue of material fact, and summary judgment is appropriate. *Simmons-Harris v. Zelman*, 234 F.3d 945, 951 (6th Cir. 2000).

Once the moving party in a summary judgment motion identifies portions of the

record which demonstrate the absence of a genuine dispute over material facts, the opposing party may not then "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact," but must make an affirmative evidentiary showing to defeat the motion. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989). The non-moving party must identify specific facts in affidavits, depositions or other factual material showing "evidence on which the jury could *reasonably* find for the plaintiff." *Anderson*, 477 U.S. at 252 (emphasis added). If the non-moving party cannot meet that burden, summary judgment is clearly proper. *Celotex Corp.*, 477 U.S. at 322-23.

### III.   DISCUSSION

The only claim asserted against Dr. Petschow in the complaint is based on the First Amendment right to access the courts. In his response to the present motion [Doc. #23], however, Plaintiff also addresses the First Amendment right to free speech and the Fifth Amendment protection against self-incrimination, claims he initially asserted against Defendants DeBoer and Price. Giving liberal construction to this *pro se* litigant's pleadings, I will construe his complaint as raising all three constitutional claims against Defendant Petschow. Unfortunately for Plaintiff, that gratuity will prove to be pyrrhic, in that he loses on all three claims.

#### A.   First Amendment

Prison inmates have a constitutionally protected right of access to the courts, grounded in the First Amendment. *Bounds v. Smith*, 430 U.S. 817, 828, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Berryman v. Rieger*, 150 F.3d 561, 567 (6th Cir. 1988)("It has long been recognized that the lawful resort to the courts is part of the First Amendment right to petition the Government for a redress of grievances"). In *Lewis v. Casey*, 518 U.S. 343,

349, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996), the Supreme Court held that in order to have standing to bring a claim for denial of access to the courts, the inmate must establish that he suffered an actual injury as a result of the alleged denial. In other words, an inmate fails to state a claim "without any showing of prejudice to his litigation." *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996).

It may be that Plaintiff's decision to appeal his case stymied his entry into SOP, but he has not shown any corresponding prejudice to his litigation. In fact, he has aggressively pursued post-conviction remedies, including a habeas corpus petition in this Court. *See Lindensmith v. Berghuis*, E.D. Mich. No. 08-12346. He indicates in his complaint that although his habeas petition was denied, he is awaiting a decision on a Certificate of Appealability. Moreover, it also appears from his complaint that he directly appealed his conviction from the Michigan Supreme Court to the United States Supreme Court in *Lindensmith v. Michigan, cert. den.* 549 U.S. 845, *rehearing den.* 549 U.S. 1102 (2006). Plaintiff's access to the courts claim is without merit.

As to Plaintiff's free speech claim, a requirement that Plaintiff accept responsibility for his acts as a prerequisite to parole does not result in a First Amendment violation. While "[t]here is no question that inmates retain many of the protections of the First Amendment, such as rights to free expression," *Bazzetta v. McGinnis* 430 F.3d 795, 804 (6th Cir.2005); *Thornburgh v. Abbott,* 490 U.S. 401, 407, 109 S.Ct. 1874, 1878, 104 L.Ed.2d 459 (1989), "the fact of incarceration necessarily imposes 'limitations on constitutional rights, including those derived from the First Amendment.'" *Hall v. Callejas,* 2011 WL 6782146, *4 (W.D.Mich.2011)(citing *Jones v. N.C. Prisoners' Labor Union, Inc.,* 433 U.S. 119, 129, 97 S.Ct. 2532, 53 L.Ed.2d 629 (1977)). "A prisoner retains only those First Amendment rights that are not 'inconsistent with his status as a

prisoner or with the legitimate penological objectives of the corrections system.'" *Id.,* (citing *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)). "Thus, 'when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests.'" *Id.,* (citing *Turner v. Safley,* 482 U.S. 78, 89, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987)).

"A prison clinical rehabilitation program" for sex crime offenders bears "a rational relation to a legitimate penological objective[.]" *McKune v. Lile,* 536 U.S. 24, 37-38, 122 S.Ct. 2017, 2027 153 L.Ed.2d 47(2002)(plurality). Moreover, "'States . . . have a vital interest in rehabilitating convicted sex offenders' and 'acceptance of responsibility for past offenses' is a 'critical first step' in a prison's rehabilitation program for such offenders[.]" *Hall,* at *5 (citing *McKune,* 536 U.S. at 33, 122 S.Ct. 2017). As such, the requirement that an inmate convicted of sexual offenses take responsibility for his actions "survives First Amendment scrutiny because it is reasonably related to a legitimate penological interest." *Id.*; *See also Newman v. Beard,* 617 F.3d 775, 781 (3rd Cir. 2010)(citing *Herrera v. Collins,* 506 U.S. 390, 399–400, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993))( because the plaintiff "no longer 'comes before the Court as one who is innocent, but, on the contrary, as one who has been convicted by due process,' [i]t follows that the prison may structure its treatment programs and pursue legitimate penological objectives from that standpoint").

Thus, Plaintiff has not demonstrated an actionable First Amendment claim.

### B.  Fifth Amendment

Plaintiff relies on *King v. Davis,* 688 F. Supp. 2d 689 (E. D. Mich. 2009)(Tarnow, J.), which dealt with a scenario in which an inmate's ineligibility for parole, for all practical purposes, was premised on her refusal to admit responsibility for criminal sexual

conduct. The denial of parole was based on her failure to participate in a risk prevention program, a prerequisite for which was a requirement that she admit her guilt. *King* reasoned as follows:

> [D]efendant may not condition a benefit on the waiver of constitutionally protected rights, *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and a false admission of guilt surely would not facilitate the penological goal of rehabilitation. Moreover, there is some disagreement as to whether an inmate's admission of guilt leads to rehabilitation. Although the Supreme Court has stated that "[a]cceptance of responsibility is the beginning of rehabilitation," *McKune v. Lile,* 536 U.S. 24, 47, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002), the Criminal Law Section of the State Bar of Michigan has taken the position that a "prisoner's assertion of innocence should not, standing alone, be a basis for denying parole," because "[t]here is not objective verifiable evidence that an 'assertion of innocence' by an inmate increases the likelihood of recidivism." State Bar of Michigan Public Policy Update, Vol. 6, Issue 47 (Nov. 17-23, 2008). *King,* 688 F. Supp. 2d at 692.

The *King* Court also found that the petitioner's Fifth Amendment right against self incrimination could be implicated for future criminal proceedings, noting that there were "no statute of limitations for first-degree criminal sexual conduct . . . and there were allegations at Plaintiff's trial that she sexually abused more children than just the complaining witness." *King,* at 692; M.C.L. § 767.24(1).

The reasoning in *King* is inapplicable to the present case for multiple reasons. First, *King* was a habeas action. Plaintiff in effect contends that pursuant to *King,* he possesses a constitutionally protected interest in maintaining his innocence without the threat of a parole denial. But this is a §1983 action, not a § 2254 habeas action. Under *Greenholtz v. Inmates of Nebraska Penal & Corrections,* 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), Plaintiff clearly does *not* have a liberty interest in parole that can be vindicated under § 1983. *See also Sweeton v. Brown,* 27 F.3d 1162, 1164 -1165 (6th Cir. 1994).

Second, Plaintiff's argument that his Fifth Amendment right against self

incrimination would be violated by his acknowledgment of guilt is without merit. The Fifth Amendment bars the prosecution from compelling a defendant's testimony in a criminal trial or advancing an adverse inference from his decision not to testify. *Kosinski v. C.I.R.*, 541 F.3d 671, 678 (6th Cir. 2008). That proscription on adverse inferences does not apply in a non-criminal case. *Id.* (citing *Baxter v. Palmigiano,* 425 U.S. 308, 318-19, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976)). Nor does it apply in the context of a parole hearing. *Ohio Adult Parole Auth. v. Woodard,* 523 U.S. 272, 286, 118 S.Ct. 1244, 140 L.Ed.2d 387 (1998) (a state clemency board may draw adverse inferences from an inmate's failure to testify on his own behalf at a clemency hearing). *See also Hawkins v. Morse*, 1999 WL 1023780, *2 (6th Cir. 1999)(unpublished)(court applies *Ohio Adult Parole Auth.* to the Michigan parole system, stating, "[I]t cannot be said that the alleged pressure to admit that he committed the crime for which he is incarcerated in order to improve his chances for parole forces Hawkins to incriminate himself in violation of the Fifth Amendment").

Finally, in *King,* the finding that the petitioner's Fifth Amendment rights could be implicated by admitting responsibility was based on the likelihood that she faced additional criminal charges arising from the same set of facts upon which she had been convicted. *King,* at 692(citing *Zicarelli v. New Jersey State Comm'n of Investigation,* 406 U.S. 472, 478, 92 S.Ct. 1670, 32 L.Ed.2d 234 (1972)(petitioner's "risk of incriminating herself by admitting guilt is a 'real danger,' not 'a remote and speculative possibility' of prosecution"). In contrast here, Plaintiff has not alleged that he anticipates additional charges or that he would be required to admit to activity beyond that for which he has already been convicted.

### C. Qualified Immunity

Dr. Petschow claims qualified immunity. Qualified immunity is an affirmative defense. A state official is protected by qualified immunity unless the Plaintiff shows (1) that the Defendant violated a constitutional right, and (2) the right was clearly established to the extent that a reasonable person in the Defendant's position would know that the conduct complained of was unlawful. *Saucier v. Katz*, 533 U.S. 194, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In *Pearson v. Callahan*, 555 U.S. 223, 129 S.Ct. 808, 172 L.Ed.2d 565 (2009), the Supreme Court held that the two-step sequential analysis set forth in *Saucier* is no longer mandatory. Rather, *Pearson* commended the order of inquiry to the judge's discretion, to be exercised on a case-by-case basis.

Here, an examination of the first prong of *Saucier* will suffice. The Plaintiff has simply not shown that Dr. Petschow violated any constitutional right. Accordingly, summary judgment in the Defendant's favor is appropriate.

### IV. CONCLUSION

For these reasons, I recommend that Defendant's Motion for Summary Judgment [Doc. #14] be GRANTED.

Any objections to this Report and Recommendation must be filed within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir.

1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

**s/ R. Steven Whalen**
R. STEVEN WHALEN
UNITED STATES MAGISTRATE JUDGE

Date:  February 1, 2013

CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail disclosed on the Notice of Electronic Filing on February 1, 2013.

David Lindensmith, #488856                s/Johnetta M. Curry-Williams
Parnall Correctional Facility             Case Manager
1780 E Parnall Rd
Jackson, MI 49201-7136